THE DALY NO. 40.

DALY v. SEABOARD COAL DOCK CO., Inc.

GREENPOINT COAL DOCKS, Inc., v. DALY et al.

Nos. 17941, 18172.

District Court, E. D. New York.

Nov. 28, 1947.

---

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for Bartle Daly.

Macklin, Brown, Lenahan & Speer, of New York City (Charles J. Carroll, of New York City, of counsel), for Greenpoint Coal Docks, Inc.

Burlingham, Veeder, Clark & Hupper, of New York City (Frederic Conger, of New York City, of counsel), for Seaboard Coal Dock Co., Inc.

INCH, District Judge.

Libellant's coal barge sank after being loaded by Seaboard with some 600 tons of coal and coke. Thereafter, libellant brought this action against the Seaboard Coal Docks Company, Inc., which had so loaded the barge, alleging that this barge Daly No. 40 sank because of the negligence of Seaboard in negligently loading the barge.

The Dock Company, Inc., which owned the cargo of coal on the barge sued, both Seaboard and Daly alleging that either the barge was improperly loaded or was unseaworthy, thereby causing damage to the car-go, as well as requiring certain salvage expenses.

By due consent the two suits were tried together, one opinion to be rendered with separate decrees. The issue raised in both cases is a simple issue of fact. The question is, did the barge sink, after she had received some 550 tons of coal and 40 tons of coke, because this cargo, in whole or in part, had been negligently placed upon her by Seaboard or because she was unseaworthy?

■ The burden of proving negligence, by a fair preponderance of evidence, rests upon libellant and to a great extent the facts must depend upon the testimony of witnesses, whose credibility becomes most material. Libellant, Daly, depends to a great extent on the testimony of Anderson, his bargee, who was in charge and present upon the barge at all the times in question.

Briefly, the facts relating to the barge and her loading appear to me to be as follows: A day or so before the 14th of September 1945, the barge Daly No. 40 had been at Greenpoint and was there unloaded. It was stipulated that the barge was 112.4 feet long, 27 feet beam and 11.9 feet depth of hold. It would seem to me that a cargo of 600 tons would not be expected to be excessive, or one that an ordinary seaworthy barge of this kind could not safely carry. The age of the barge is not known, but it is plainly indicated that she was an old barge engaged in the carrying of such cargo as coal. Captain DeMars, the marine surveyor and appraiser, called as a witness by libellant Daly, estimates the barge was about 26 years old.

After the barge had been emptied of her cargo at Greenpoint, Anderson, the master of the barge, was then told that she then would go to South Amboy and there be loaded with 10 or 11 cars of soft coal and a car of coke. Accordingly, about 8 or 9 o'clock in the morning of the 14th, the barge arrived empty at South Amboy and Anderson then went to an office on the dock to inquire about this new cargo. The barge had been tied up to the light stakes.

Naturally, at the trial, Anderson, who was in sole charge of the barge, wished to avoid any inference that he was careless.

However, that he was careless in the care of the barge I am satisfied. Whether or not such carelessness did anything more than contribute to a failure to prevent the subsequent sinking of the barge due to the inability of the barge herself to carry her load may be argued, but there are certain side lights thrown on Anderson's testimony which indicate to me that Anderson, an experienced bargee, then knew his barge was in a doubtful condition to take on the load contemplated of some 600 tons. Anderson himself testified that when the barge had been shifted from the stakes into the dumper slip about 6 o'clock, he found she had what he guessed was 9 inches of water before they loaded, and that this water was in the port corner of the stern. Yet, he had pumped her out in Greenpoint. (Anderson's testimony at page 12.)

It is significant that he also testified that when he reached South Amboy and went up to get the order for the coal and coke, which was to be 10 or 11 cars of coal and a car of coke, that he suggested: "I said let me have 8 or 9 cars of soft coal and then the car of coke". To be sure this might relate to the loading as Anderson said. Nevertheless, it does indicate to me that Anderson would have preferred to have had a smaller load. He also knew that the barge leaked considerably even without a load.

Mr. Bagger, a witness on behalf of Seaboard, stated that 9 inches leakage every 24 hours was excessive and, in his opinion, she was not fit to carry cargoes of coal. Anderson says this water was due to the rain. The evidence shows that it did rain on September 14th, but also that she did have this excessive quantity of water in her port stern quarter even before she was loaded as testified to by Anderson.

In addition, it seems to me that reference should be made to the testimony of O'Brien, who was an independent witness called by Seaboard, and employed by the Pennsylvania Railroad, as assistant marine foreman, that in the office of the railroad at the head of Pier A, north of the dumper dock, to which Anderson came about 11:30 that night, Anderson suggested that his barge be placed on the mud because she had 3 feet of water in her. According to O'Brien

who then apparently went down to the barge, Anderson also said, "he had these leaks and Daly wouldn't fix them and he said he wanted to go just one more trip, and he said it had been going on, and they wouldn't fix it". This was not contradicted by Anderson.

A motion to strike out this testimony as not responsive was made and denied and ordinarily it might not be material, but it seems to me proper to consider this in regard to the credibility of Anderson, who at the trial, was endeavoring to persuade the court that his barge did not leak excessively and was in all respects seaworthy.

In my opinion, therefore, this barge when she arrived at South Amboy, was in no fit condition to take on the 600 tons of coal and coke and, that Anderson really felt this was so. However, libellant Daly depends on the following claim: That the barge sank because, after she had been loaded with approximately 550 tons of coal, the Seaboard employees loaded on her bow 40 tons of coke in such a way as to twist the barge causing her to spring a leak to such an extent that she sank. As to this there is substantial evidence to the contrary and with due regard to the burden of proof resting on libellant, I find that the 550 tons of soft coal was loaded properly upon the barge, and that as to the question of the effect of the comparatively small amount of 40 tons of coke then being loaded this would not be sufficient to do more than list the barge slightly and would not have caused a twist such as libellant now claims.

I am assuming that Anderson believed he could see a twist of a few inches and it may well be that the barge was, in fact, suffering from a slight twist when she arrived to be loaded. I do not find that the loading of the coke on the 550 tons of coal, that already had been properly loaded on the barge, caused a twist which the barge was said to have, some time after she had sunk, her cargo taken off, and she had been raised, which twist was found to be gradually correcting itself due to the fact, in my opinion, that this old barge was, as Mr. Bagger puts it, "limber".

We now come to the actions of Anderson when he discovered that the barge was leaking excessively and which according to

libellant's expert DeMars, would rapidly increase. In the first place, he relied on a small pump that had been on the boat for approximately four years. He had a hand pump but did not use it, yet this other pump was allowed to soon stop because of insufficient gas. After this had been remedied by Anderson, who had been absent during the time the pump stopped, the pump entirely broke down. Anderson failed to take soundings, he guessed by looking down the pump well which certainly was not the proper way to take soundings. Although he had 3 feet of water in the barge, he did not ask the railroad tug, which had a syphon, to put it in. This tug belonged to the Pennsylvania Railroad, not a party to this suit. Anderson's excuses for this failure do not impress the court. Instead, he wasted all the time to get this tug to bring over a small pump from another boat, which he took out later, because he says he did not want to have it lost.

Altogether, this carelessness on the part of Anderson, for which libellant is responsible, was such, that probably in spite of her excessive leaking, her sinking might have been prevented had he used even reasonable care to take advantage of the help available to prevent the unfortunate result which occurred

While the facts in each controversy differ, sometimes materially, the principle is made plain in the cases, that a duty rested upon libellant and Anderson to use reasonable care to protect the barge from injury; where such bargee was present and such danger was reasonably apparent to him. New York and New Jersey Trans. Co. v. Cornell Steamboat Co., 2 Cir., 180 F. 107; Westchester Fire Ins. Co. v. Pennsylvania R. Co., 2 Cir., 96 F.2d 133; The Maurice R., D.C., 3 F.Supp. 86, E. D. Campbell, J.

In my opinion, after considering all the testimony of all the witnesses, libellant Daly is responsible for the sinking for the foregoing reasons and his libel should be dismissed. As to the Greenpoint Dock Company, Inc., I do not feel bound by any of the proceedings in the state court. The Seaboard was not a party to that state court action, and the question litigated was of a different nature than that here pre-sented aside from the different testimony of Anderson. It is my opinion, this libel should be dismissed as to the Seaboard and a decree entered in favor of this libellant Greenpoint against Daly. The amount of damage, if any, should be ascertained in the regular course of procedure.

Submit findings of fact and conclusions of law.